J-S21011-25
J-S21012-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVERTON HASSAN HEDGEBETH | : | |
| | : | |
| Appellant | : | No. 2004 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 28, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0002357-2023

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| EVERTON HASSAN HEDGEBETH | : | |
| | : | |
| Appellant | : | No. 2006 EDA 2024 |

Appeal from the Judgment of Sentence Entered June 28, 2024
In the Court of Common Pleas of Delaware County Criminal Division at
No(s): CP-23-CR-0005319-2023

BEFORE: KUNSELMAN, J., KING, J., and FORD ELLIOTT, P.J.E.[*]

MEMORANDUM BY KUNSELMAN, J.: **FILED SEPTEMBER 23, 2025**

Everton Hedgebeth appeals from his judgment of sentence after he was found guilty of aggravated assault, first-degree murder, and related firearm charges in two separate cases involving different incidents and victims. He

_____

[*] Retired Senior Judge assigned to the Superior Court.

claims that the trial court erred when it consolidated his charges from the two cases for trial. Upon review, we affirm.

The facts of the first incident (5319-23) are as follows. On September 22, 2022, Hedgebeth went to the home of Janeya Roberts ("Janeya") at 1227 West Ninth Street in Chester, Pennsylvania. Janeya was 5 months pregnant with Hedgebeth's child. Janeya and Hedgebeth got into an argument about his relationship with another woman, which turned into a physical altercation. As Hedgebeth was leaving Janeya's apartment, her brother, Jasmar Roberts ("Roberts"), showed up. Seeing that his sister was upset, Roberts confronted Hedgebeth, and the two of them began to argue. Hedgebeth then pulled out a gun from his pocket, shot Roberts twice, and ran off. Roberts was seriously injured.

Detectives and officers from the Chester City Police Department arrived at the scene of Roberts' shooting. They found one fired cartridge casing. No firearm was recovered.

The police submitted the fired cartridge casing to Detective Louis Grandizio, a firearms examiner from the Delaware County Criminal Investigation Division ("CID"). Upon examination, he determined that it was a 9-millimeter Luger.

The police later questioned Roberts and Janeyah. However, at the time, no one identified who shot Roberts.

Several months later, the second incident occurred. On January 13, 2023, Janiyah Trusty ("Trusty")[1], who lived at 1231 West Ninth Street, near Janeya, came home from work and chatted with her brother, Lorenzo Driggins who also lived there. Janeya showed up at Trusty's apartment and left with Driggins to go back to her place. As they were leaving, Trusty saw from her window two men walking up the street wearing black masks. As they got closer, Trusty recognized them as Hedgebeth and Jason Ferguson. Trusty ran to Janeya's apartment, but Hedgebeth and Ferguson were already there. Janeya's son opened the door a little to let Trusty in, but Hedgebeth pushed his way into Janeya's apartment behind Trusty. Driggins tried to walk past Hedgebeth to leave, but Hedgebeth pulled out a gun and shot Driggins multiple times, killing him.

Detectives and officers were dispatched to the scene of the Driggins' homicide. Janeya told police that she witnessed the shooting, identified Hedgebeth as the shooter, and picked him out from a photographic lineup. Trusty also gave a statement to the police positively identifying Hedgebeth as the shooter and picked him out from a photographic lineup.

At the Driggins' homicide scene, the police recovered three fired cartridge casings and various bullet fragments. Again, no firearm was recovered. At the autopsy, the medical examiner removed a bullet from

---

[1] We observe that Trusty's first name is spelled differently throughout the record in this case. We used her name as identified in the Commonwealth's pretrial statement.

Driggins' leg. The bullet was a 9-millimeter Luger and matched a bullet fragment recovered from the Driggins' shooting scene.

Detective Grandizio examined the recovered fired cartridge casings and bullet specimens related to the Driggins' homicide. All three casings were 9-millimeter Luger. Notably, two of the casings found at the scene had the same unique markings.

Based on Janeya and Trusty's identifications, Hedgebeth was arrested for the shooting death of Driggins. On January 14, 2023, Hedgebeth was charged with, *inter alia*, first degree murder, murder of the third degree, firearms not to be carried without a license, and person not to possess a firearm (case no. 2357-23).

Detective Grandizio was asked to take the evidence from the Driggins' homicide and crosscheck it with the evidence from the Roberts' shooting. Detective Grandizio compared the fired cartridge casings from both scenes. The casing found at the scene of the Roberts' shooting had the same unique markings as the two casings from the Driggins' homicide scene. Consequently, Detective Grandizio determined that all three casings were discharged from the same firearm.

Eventually, in May 2023, after the Driggins' homicide, Janeya identified Hedgebeth as the person who shot Roberts. She positively identified Hedgebeth in a photographic lineup. On September 13, 2023, Hedgebeth was charged in the shooting of Roberts with multiple crimes including attempted

homicide, aggravated assault, carrying a concealed firearm without a license, and person not to possess (case no. 5319-23).

On December 6, 2023, the Commonwealth filed a motion to consolidate Hedgebeth's charges in both cases for trial. The trial court held argument on December 15, 2023. The Commonwealth maintained that the cases should be consolidated because the ballistics expert would testify that the fired cartridge casings retrieved from both shooting scenes came from the same gun. This would bolster the eyewitnesses' testimony which identified Hedgebeth as the perpetrator in both incidents. However, trying both cases together would necessarily involve introducing evidence of alleged crimes in both cases.

Hedgebeth opposed the motion, claiming that trying the two cases together would be extremely prejudicial and outweigh the probative value of the ballistics evidence. Hedgebeth also argued that the incidents were four months apart, unlike other cases that permitted consolidation, involving a much shorter periods of time between incidents.

On February 16, 2024, the trial court granted the Commonwealth's motion for consolidation. However, trying the two cases together, the court limited the Commonwealth's evidence from one case to establish the identity of the shooter in the other case. In other words, the Commonwealth could attempt to establish the identity of the alleged shooter by showing evidence that the fired cartridge casing recovered from the Roberts' crime scene was

discharged from the same gun as the cartridge casings found at the Driggins' crime scene based on ballistics analysis.

On April 17, 2024, a jury found Hedgebeth guilty as follows: in the Driggins' case, murder of the first degree and firearms not to be carried without a licenses; in the Roberts' case, aggravated assault—causes or attempts to cause serious bodily injury and firearms not to be carried without a license.[2]  The trial court found Hedgebeth guilty of persons not to possess a firearm in both cases.[3]  The jury acquitted Hedgebeth of attempted murder in the Roberts' case.

On June 28, 2024, the trial court imposed an aggregate sentence of life in prison without the possibility of parole.

Hedgebeth filed timely, separate appeals in both cases.  He and the trial court complied with Appellate Rule 1925.[4]

Preliminarily, we observe that Appellate Rule 513 provides that we may, in our discretion, consolidate appeals in certain circumstances.  Pa.R.A.P. 513; *see Always Busy Consulting, LLC v. Babford & Company, Inc.,* 247 A.3d 1033, 1042 (Pa. 2021).  Here, both appeals arise from a single order—the trial

---

[2] 18 Pa.C.S.A. §§ 2502(a), 2702(a)(1), and 6106(a).

[3] 18 Pa.C.S.A. § 6105.

[4] Hedgebeth's Appellate Rule 1925(b) statement was filed well beyond the allotted 21 days.  However, the trial court acknowledged that there was a breakdown in court operations which delayed the docketing and service of the order upon Hedgebeth's counsel.  Trial Court Opinion, 11/27/24, at 10.  Ultimately, Hedgebeth filed his statement 3 days before the trial court's order was docketed.  Therefore, he did not waive his issue for appeal.

court's order consolidating Hedgebeth's two cases for trial. Additionally, the issue Hedgebeth raises on appeal in each case is the same. His briefs are the same. Consequently, we consolidate Hedgebeth's appeals *sua sponte* and modify the caption accordingly. **See** Pa.R.A.P. 513); **see also Commonwealth v. Dunham**, 319 A.3d 12, 12 (Pa. Super. 2024).

Hedgebeth raises the following single issue for our review:

I.    Did the trial court err in granting Commonwealth's consolidation application in ruling that [case numbers] 2357-2023 and 5319-2023 be tried jointly?

Hedgebeth's Brief at 4.

Hedgebeth claims that the trial court abused its discretion when it consolidated his two cases for trial. In considering Hedgebeth's issue, we are mindful that the issue of whether to grant a motion to consolidate separate indictments is within the "sole discretion of the trial court[,] and such discretion will be reversed only for a manifest abuse of discretion or prejudice and clear injustice to the defendant." **Commonwealth v. Ferguson**, 107 A.3d 206, 210 (Pa. Super. 2015) (internal citations and quotations omitted).

Pennsylvania Rule of Criminal Procedure 582 provides, in relevant part, that offenses charged in separate indictments or informations may be tried together if:

(a) the evidence of each of the offenses would be admissible in a separate trial for the other and is capable of separation by the jury so that there is no danger of confusion ....

Pa.R.Crim.P. 582(A)(1)(a); *Commonwealth v. Stiles*, 143 A.3d 968, 975 (Pa. Super. 2016). If the answer to these questions is "yes," the court must determine whether [the] defendant will be unduly prejudiced by consolidation. *See Commonwealth v. Thomas*, 879 A.2d 246, 260 (Pa. Super. 2005).

The court has discretion to order separate trials if "it appears that any party may be prejudiced" by consolidating the charges. Pa.R.Crim.P. 583. Under Criminal Rule 583, the prejudice the defendant suffers due to the joinder must be greater than the general prejudice any defendant suffers when the Commonwealth's evidence links him to a crime. *Commonwealth v. Lauro*, 819 A.2d 100, 107 (Pa. Super. 2003). Prejudice, for purposes of consolidation, is

> that which would occur if the evidence tended to convict [the defendant] only by showing his propensity to commit crimes, or because the jury was incapable of separating the evidence or could not avoid cumulating the evidence. Additionally, the admission of relevant evidence connecting a defendant to the crimes charged is a natural consequence of a criminal trial, and it is not grounds for severance by itself.

*Commonwealth. v. Dozzo*, 991 A.2d 898, 902 (Pa. Super. 2010). The party appealing the grant of consolidation bears the burden of establishing prejudice. *See Commonwealth v. Patterson*, 546 A.2d 596, 599–600 (Pa. 1988) (internal citations omitted); *Commonwealth v. Gray*, 296 A.3d 41, 47 (Pa. Super. 2023). The appellant must show real potential for prejudice and not mere speculation. *Commonwealth v. Rivera*, 773 A.2d 131, 137 (Pa. 2001).

Moreover, the law encourages joinder of offenses and consolidation of indictments "'when judicial economy can thereby be effected, especially when the result will be to avoid the expensive and time-consuming duplication of evidence.'" *Commonwealth v. Johnson*, 236 A.3d 1141, 1150 (Pa. Super. 2020) (*en banc*) (quoting *Patterson*, 546 A.2d at 600); *Gray*, 296 A.3d at 47.

Hedgebeth claims that the trial court abused its discretion by consolidating his two cases. Specifically, he argues that the Commonwealth's purpose in requesting the court to try his cases together "was to muddy the character of [Hedgebeth] in the minds of the jury and show his propensity to commit the crime charged." Hedgebeth's Brief at 17. Hedgebeth further maintains that the evidence presented regarding the Roberts' shooting was far more prejudicial than probative. *Id.* at 9, 17. Therefore, according to Hedgebeth, we should reverse his judgment of sentence.[5] *Id.* at 18. We disagree.

In consolidating the charges for trial from Hedgebeth's two cases, the trial court considered the relevant criteria for consolidation. First, the trial court concluded that the evidence from each incident would be admissible at separate trials to prove the identity of the shooter in each case. *See* Trial Court Opinion, 11/27/24, at 18-20. The court considered the rules of

_____

[5] We note that the proper remedy for improperly joining cases for trial is to remand for separate trials not reversing the judgment of sentence.

- 9 -

evidence, in particular, Pennsylvania Rule of Evidence 404.  ***Id.*** at 15-16.  This rule provides, in relevant part:

> **Rule 404. Character Evidence; Other Crimes, Wrongs, or Acts**
>
> ***
>
> **(b) Other Crimes, Wrongs, or Acts.**
>
> (1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.
>
> (2) *Permitted Uses.* This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.  In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.

Pa.R.E. 404(b)(1) and (2).  Thus, evidence of other crimes or bad acts is not admissible to prove that the defendant acted "in conformity with those acts or to demonstrate a criminal propensity."  ***Commonwealth v. Brown***, 52 A.3d 320, 325 (Pa. Super. 2012); Pa.R.E. 404(b).  The evidence, however, may be admissible for another, proper purpose.  ***Brown***, 52 A.3d at 325.  One such proper purpose is to establish identity of the perpetrator.  "While evidence concerning . . . distinct crimes is inadmissible solely to demonstrate a defendant's bad character or his propensity to commit crimes, that evidence will be permitted to establish the identity of the perpetrator where proof of one crime tends to prove the others."  ***Stiles***, 143 A.3d at 975-76 (citing ***Commonwealth v. Cousar***, 928 A.2d 1025, 1037 (Pa. Super. 2007).

Here, contrary to Hedgebeth's claim, the Commonwealth did not seek or attempt to introduce evidence from one case to impugn his character or show he had a propensity to commit crimes in the other case. Rather, the Commonwealth used the ballistics evidence to establish that Hedgebeth was the shooter in both cases and corroborate the eyewitnesses' identification of the shooter in each case. In fact, our courts previously have permitted admission of the exact type of evidence presented in the instant case to establish the identity of a perpetrator. **See Commonwealth v. Reid**, 626 A.2d 118 (Pa. 1993). In **Reid**, our Supreme Court concluded:

> [Because] the circumstances of the second murder . . . place a weapon used in both murders in the hands of Reid at the time of the second murder, the question is whether a jury may draw an inference that Reid was the shooter in the first murder. Because empty shell casings from the same weapon were found at both murder scenes, and Reid was identified as the handgun shooter in the second murder, in which a ten millimeter bullet was found in the victim's head, evidence of the second murder is admissible to establish Reid's identity as the shooter in the first.

**Reid**, 626 A.2d at 121. Additionally, where ballistics evidence from one murder matched ballistics evidence from another murder tended to establish the identity of the shooter, our courts have concluded that consolidation of the cases for trial was not an abuse of discretion. **See Stiles**, 143 A.3d at 976-77; **Cousar**, 928 A.2d at 1038-1039.

Furthermore, the Commonwealth's presentation of this evidence did not exceed the parameters of the consolidation order. As the trial court observed, Detective Grandizio, an expert in forensic firearm and tool mark analysis,

- 11 -

testified consistently with the prosecution's proffer in support of its consolidation application. Trial Court Opinion, 11/27/24, at 22. Based upon ballistics testing, "Detective Grandizio testified that per his expert opinion the one [] expended cartridge casing recovered from the scene of the Roberts' shooting was fired from the same weapon that discharged two [] of the fired cartridge casings found at the Driggins' homicide site." *Id.*

Moreover, to ensure limited consideration of this evidence pursuant to its order, the trial court instructed the jury several times during the trial proceedings regarding the proper use of this evidence. In particular, immediately after Detective Grandizio's direct examination, the court gave the jury the following cautionary instruction:

> THE COURT: . . . Ladies and gentlemen, you just heard Detective Grandizio testify that in his opinion[,] [t]he cartridge case he recovered [from the] September 21, 2022, alleged scene was discharged from the same firearm as certain cartridge cases secured [from the] January 13th, 2023, supposed scene. Credibility and weight of this evidence is for you.
>
> Although you will make under each case number 2357-23 and 5319-23 separate and independent determinations of whether [] Hedgebeth has been proven by the prosecution guilty beyond a reasonable doubt of all, some, or none of the at issue crimes[,] ***[y]ou may consider that Detective Grandizio's testimony opining the same firearm purportedly discharged [] [t]he cartridge case [] recovered from each alleged scene in both matters solely and only for the limited purpose of [the] Commonwealth, for them to establish the perpetrator's identity. This evidence offered by Detective Grandizio regarding the cartridge[] cases must not be considered by you in any other way than [except] for the purposes I've just stated. You must not regard this evidence as showing that [] Hedgebeth [is] a person of bad character or criminal tendencies from which you might be inclined to infer guilt.***

N.T., 4/16/23, at 177-78 (emphasis added). The court reiterated this limitation during its final charge. N.T., 4/17/24, at 129. Juries are presumed to follow the trial court's instructions, including instructions relating to joined offenses. *See Commonwealth v. Mollett*, 5 A.3d 291, 313 (Pa. Super. 2010).

Next, the trial court concluded that the jury was capable of distinguishing the two crimes from each other. *See* Trial Court Opinion, 11/27/24, at 28. A jury is capable of separating the evidence "[w]here a trial concerns distinct criminal offenses that are distinguishable in time, space, and the characters involved[.]" *Commonwealth v. Collins*, 703 A.2d 418, 423 (Pa. 1997).

Here, multiple factors distinguished the two incidents from each other. These cases were filed at two separate docket numbers, one for each shooting. Although Janeya was present for both shootings, others were present for Driggins' shooting, notably Trusty. Different detectives and police officers investigated the incidents. Notably, the victims were different and suffered different injuries to very different degrees. The incidents occurred on separate dates, almost four months apart.

The trial court also emphasized to the jury that the trial involved separate and distinct cases and they were to consider them as such, except for the Commonwealth's forensic evidence relating to identity. *See* Trial Court Opinion, 11/27/24, at 26, 28. Significantly, the court cautioned the jury that:

the evidence pertaining [to] the matter 2357-2023, the allegation [of] January 13, 2023, must not be considered by you in determining whether the Commonwealth has established [] Hedgebeth's guilt beyond a reason[able] doubt in case number 5419-2023, the allegation on September 21, 2022. [Conversely], the evidence material [to] matter 5319-2023 regarding the allegations of [January 21, 2023] must not be considered in deciding whether the prosecution [] established beyond a reasonable doubt, [] Hedgebeth's guilt in the case number 2357-2023 the allegation of January 13, 2023.

N.T., 4/17/24, at 130.

Furthermore, the jury made separate findings for each charge under each docket number. Notably, the jury acquitted Hedgebeth of attempted murder related to the Roberts' incident, demonstrating the jury considered each case and each charge separately.

Lastly, the trial court rejected Hedgebeth's claim that he was prejudiced by consolidation of his charges for trial. *See* Trial Court Opinion, 11/27/24, at 28.

As discussed above, other criminal acts are admissible to establish the identity of the actor in each case. However, such evidence is only admissible if its probative value outweighs the potential for prejudice. *See* Pa.R.Crim.P. 404(b).

Here, the trial court found the ballistics evidence related to the shootings to be highly probative to establish the shooter in each case. Trial Court Opinion, 11/27/24, at 28. This was particularly so given that the witnesses to the Roberts' shooting were very hesitant to identify Hedgebeth as the shooter. Thus, the value of this evidence exceeded any prejudice which might arise

from the jury being made aware that Hedgebeth may have committed another crime. Indeed, Pennsylvania courts have found that such ballistics evidence is very probative and outweighs the potential for any prejudice. *See Cousar*, 928 A.2d at 1038.

Additionally, as the trial court emphasized, it instructed the jury multiple times on to how it should treat the two cases being tried together in order to obviate the potential for prejudice. *See* Trial Court Opinion, 11/27/24 , at 28. Notably, the court informed the jury that the cases were separate, that evidence relating to each incident was to be considered separately unless it instructed them otherwise, that certain evidence introduced for a limited purpose could only be considered for such purpose, and that Hedgebeth's guilt in the two cases was to be considered separately. *See id.* at 22-26; *see also*, N.T., 4/16/24, at 21-23, 177-78; N.T., 4/17/24, at 129-32.

Upon review, we conclude that the trial court did not abuse its discretion when it consolidated Hedgebeth's charges for trial. Accordingly, Hedgebeth is not entitled to relief.

Judgments of sentence affirmed.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 9/23/2025